**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE MIDDLE DISTRICT OF TENNESSEE**
**NASHVILLE DIVISION**

| | | |
|---|---|---|
| In re: | ) | Chapter 11, Subchapter V |
| | ) | |
| **BARISTA PARLOR LLC;** | ) | Case Numbers |
| **BARISTA PARLOR HOLDINGS LLC; and** | ) | 3:26-bk-05105 |
| **BARISTA PARLOR ROASTING LLC.** | ) | 3:26-bk-05106 |
| | ) | 3:26-bk-05107 |
| Debtors. | ) | |
| | ) | Judge Charles M. Walker |
| ***JOINT ADMINISTRATION REQUESTED*** | ) | |

## COMPANY PROFILE

The above-captioned debtors, Barista Parlor LLC ("BP East"), Barista Parlor Roasting LLC ("Roasting") and Barista Parlor Holdings, LLC ("Holdings") (together, the "Debtors" or "Barista Parlor"), file this Company Profile[1] in support of the motions and other matters to be filed in these cases. To avoid repeating the Debtors' background in every motion, the Debtors incorporate this Company Profile by reference in current and future filings as needed.

### Background

Barista Parlor opened its first cafe in 2012 in a converted garage at 519 Gallatin Avenue in East Nashville. The cafe received national press within months of opening and established Barista Parlor as one of Nashville's leading independent coffee brands. Barista Parlor opened a second cafe and a roastery in the Gulch (2014), followed by a Germantown location and, in 2018, Marathon Village. Barista Parlor licensed its brand and coffee to third parties, with cafes opened at Nashville International Airport in 2020 and in the W Nashville hotel in 2021. Barista Parlor opened new locations in Hillsboro Village (2021) and the Sylvan Supply development (2022),

[1] The Debtors expressly reserve the right to supplement and amend this profile. It is based on information available to counsel at the time of filing.

expanded out of state to Indianapolis and Louisville (2023), and opened a location at Park Commons near Geodis Park (2024). At its height, Barista Parlor operated seven Nashville cafes, two licensed cafes and two out-of-state cafes, roasted and sold coffee wholesale, employed dozens of people, and generated several million dollars a year in revenue.

Barista Parlor built its sizeable footprint with borrowed money in leased spaces. FirstBank and Pathway Lending financed the expansion, buildouts, and working capital, secured by the Barista Parlor group's assets. The model depended on each new café reaching the volume of the original core locations, and most never did. Coffee is a low-ticket business. Small average tickets require high volume to cover rent escalations and debt service, let alone sharply increased insurance, labor, and coffee costs. Barista Parlor's newest locations had the highest rents and lowest margins. By late 2022, the satellite cafes were consuming the cash produced by the more profitable locations and roasting operation, and Barista Parlor was borrowing to cover the difference. That borrowing created additional costs, which was simply unsustainable.

Barista Parlor closed Marathon Village in 2023. It closed the Gulch cafe in early 2024 in anticipation of a relocation that never occurred. It closed Indianapolis and Park Commons in 2025. In January 2026, Barista Parlor closed Hillsboro Village, Sylvan Supply, Germantown and Louisville within the same week and laid off roughly fifteen employees. As explained publicly at the time, a nine-dollar average ticket could not support Nashville retail rents, insurance, taxes, coffee costs and labor, and the Germantown rent had more than doubled over the life of the lease.

**Operations**

Barista Parlor closed the East Nashville Location for several weeks in mid-2026 and reopened it with a simplified menu. Since reopening, the East Nashville Location has operated a

single daily shift with a reduced menu, and its monthly revenue has held steady at a level the Debtors believe is sustainable.

As of the Petition Date, Barista Parlor operates its East Nashville Location five days a week, 8:00 a.m. to 2:00 p.m., offering espresso and brewed coffee, pastries and light food, and retail merchandise. Barista Parlor has four hourly employees. Andy Mumma ("Mumma"), the Debtors' founder, works in the business without salary. Barista Parlor also roasts coffee on Roasting's equipment for the East Nashville Location, the licensed cafes and wholesale accounts, and receives royalty and fee income under license arrangements at the W Nashville hotel and the Nashville International Airport.

The licensees operate the airport and W Nashville cafes and pay a royalty on their sales that is deposited to Barista Parlor's operating account. The roasting business supplies the East Nashville Location, the licensed cafes and a small number of wholesale accounts. Roasting revenue declined by about one-third from 2024 to 2025 as Barista Parlor closed its locations. Revenue at the East Nashville Location held within ten percent of the prior year.

The Debtors' cash on hand on the Petition Date was nominal. Barista Parlor's prepetition operating account at FirstBank carried a balance near zero, and the Debtors will be opening a debtor-in-possession account. The Debtors do not intend to seek authority to use cash collateral and reserve all positions regarding whether post-petition receipts constitute cash collateral of any creditor.

**Corporate Structure**

BP East is a Tennessee limited liability company formed in 2011. It is the group's operating company. It operates the East Nashville Location, administers the Barista Parlor license arrangements at the W Nashville hotel and the Nashville International Airport and receives the

royalty income from them, conducts the group's wholesale coffee roasting, employs the group's four hourly employees, and maintains the only operating bank account in the group. All of the Debtors' receipts and disbursements run through BP East's operating account.

Barista Parlor Roasting was formed in 2014 to conduct the Barista Parlor group's roasting and wholesaling operations. It owns a Diedrich CR25 coffee roaster and related equipment, which Barista Parlor uses to roast coffee for BP East, the licensed locations, and wholesale and retail customers. Roasting has no employees and no premises; the roaster is kept in storage. Roasting's bank account was closed in March 2026 and had not been used since January 2026; the roasting business's receipts and disbursements are run through BP East's account.

Barista Parlor Holdings is a Tennessee limited liability company formed in 2019 as the parent of the Barista Parlor group. Mumma is Holdings' Managing Member with about 68% of its membership interests – the remaining 32% is held disparately by twenty-four outside investors. Holdings owns 100% of the membership interests in BP East and Barista Parlor Roasting. Holdings has no employees, no operations and no bank account; its only material assets are its interests in Barista Parlor and Roasting.

Barista Parlor operated its other locations through single-purpose affiliates owned by Holdings, each formed to hold one location's lease and operations.[2] All of those affiliates have closed and none is a debtor. Several of them, and Mumma personally, are co-obligors or guarantors on the Debtors' principal debts (and vice versa).

The Barista Parlor group's income has been reported on a single partnership return filed by Holdings, under which Barista Parlor and Roasting are reported. Because the group has operated

[2] Barista Parlor Germantown LLC, Barista Parlor Hillsboro Village LLC, Barista Parlor Golden Sound LLC, Barista Parlor Marathon Village LLC, Barista Parlor Park Commons LLC, Barista Parlor Sylvan Supply LLC, Barista Parlor Atlanta, LLC, Barista Parlor 500w LLC (Louisville, Kentucky) and Barista Parlor Stutz Indianapolis LLC (Indianapolis, Indiana).

through one account and one set of books, intercompany balances among the Debtors and the closed affiliates cannot be reconstructed without cost out of proportion to the estates. The Debtors intend to seek substantive consolidation and to propose a single plan.

## Factors Leading to Filing

The East Nashville Location is a sound business. Barista Parlor borrowed, leased and hired for an eleven-location enterprise, and a one-location enterprise cannot carry the debt that remains:

- **Expansion into high-rent retail:** Barista Parlor built out every location after the first in a landlord's space under a multi-year lease. The build-out costs were sunk, the rent escalated, and the average ticket never caught up with either.

- **Merchant cash advances:** As the satellite locations drained cash in 2025, Barista Parlor took merchant cash advances from Spartan Capital, Pinnacle, Toast, Stripe and Vader, repaid through daily and weekly sweeps of the operating account. Spartan Capital placed a hold on the Square account through which the East Nashville Location takes most of its sales. The Debtors dispute the characterization and enforceability of these advances and reserve all claims against the funders.

- **Taxes:** Sales, business, and franchise and excise taxes went unpaid as locations struggled and then closed. The Tennessee Department of Revenue has recorded liens and levied on the operating account. Personal property taxes are owed to the Metropolitan Trustee.

- **Labor disputes:** A protracted labor dispute with former Barista Parlor employees involving the NLRB consumed legal fees and management attention from 2023 through 2026.

- **Legacy obligations:** The closed locations left landlord claims, vendor claims, and tax balances. Some are claims against the closed affiliates alone. Others were guaranteed by, or incurred in the name of, one or more of the Debtors. By the summer of 2026, the MCA sweeps, the Square hold, the tax levy, and a judgment garnishment were all drawing on the same operating account.

## Litigation

Spartan Capital sued the Debtors, the closed affiliates and Mumma in New York on its merchant cash advance. The defendants answered and contend that the agreement is a usurious loan. The Hillsboro Village landlord holds an agreed judgment against the Hillsboro Village affiliate and Holdings. Two vendors hold judgments against BP East, and one of them garnished

the operating account in September 2026. In March 2026, the National Labor Relations Board entered a default judgment against the Germantown affiliate, which is not a debtor, for failing to comply with a settlement of a 2023 charge arising from employee terminations at the Gulch cafe.

**Owner Conduct**

Mumma has covered the financial shortfalls personally. Mumma ran the East Nashville Location on his own for several weeks post-reopening He has drawn no salary during the contraction, has contributed several hundred thousand dollars of his own money to the business, and paid the East Nashville landlord's past-due rent in 2026 with funds he borrowed personally. When Barista Parlor closed its last satellite locations, Mumma worked with FirstBank to auction FirstBank’s FF&E collateral and applied the proceeds to FirstBank's debt and to the Debtors' retainer for these cases.

**Path Forward**

In these Subchapter V cases, the Debtors will:

- seek joint administration and substantive consolidation of the three estates, so that one plan funded from Barista Parlor's operations addresses every creditor of the group;
- continue operating BP East, the license arrangements, and the wholesale roasting business without interruption;
- address the Spartan hold on the Square account and any other prepetition restraint on the Debtors' cash and receipts;
- wind up Roasting as a separate entity by merging it into Barista Parlor under the plan, with the roaster continuing in use by the reorganized debtor;
- restructure the FirstBank and Pathway Lending obligations and pay allowed priority tax claims over the plan term, as the Bankruptcy Code permits; and
- propose a plan within the 90-day period of 11 U.S.C. § 1189(b).

Respectfully Submitted,

/s/ R. Alex Payne

R. Alex Payne
DUNHAM HILDEBRAND PAYNE WALDRON, PLLC
9020 Overlook Boulevard, Suite 316
Brentwood, TN 37027
629.777.6539
alex@dhnashville.com
*Counsel for Debtors*

## CERTIFICATE OF SERVICE

On October 21, 2026, the foregoing was served via CM/ECF on all parties consenting to electronic service in this case, and by regular mail, email, or fax (as applicable) to (i) each Debtor's twenty largest creditors, (ii) the Office of the United States Trustee, and (iii) each Debtor's secured creditors.

/s/ R. Alex Payne
R. Alex Payne